[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1252 
The opinion of March 26, 2004, is withdrawn, and the following is substituted therefor.
On May 9, 2002, Marcus Dewayne Craig was indicted for two counts of first-degree robbery, violations of § 13A-8-41(a)(1), Ala. Code 1975. The two cases were consolidated on October 4, 2002. On November 5, 2002, Craig was convicted of two counts of first-degree robbery as charged in the indictments. On December 18, 2002, the trial court sentenced Craig, as a habitual offender, to two terms of life in prison without the possibility of parole. See § 13A-5-9(c)(4), Ala. Code 1975. Craig filed a postjudgment motion on January 17, 2003, which the trial court summarily denied on January 28, 2003.
The facts adduced at trial indicate the following: On July 9, 2001, Paulette Gallahar was working at a dry-cleaning business when Craig entered the store, pulled out a weapon, and announced, "`Oh by the way, this is a robbery. . . . I'm taking money out of this store and I'm taking your car.'" (R. 95.) Craig stole $45 from the cash register and forced Gallahar into the back of the store. In the back of the store, Craig took $5 and car keys from Gallahar's purse. Craig forced Gallahar to kneel in a corner, put plastic around her head, and held a gun to her head. Another customer entered the front of the store. Craig went to wait on the customer, so as to not cause any suspicion. Gallahar ran to the doorway to the front of the store and shouted, "`It's a robbery, it's a robbery.'" (R. 103.) She ran out the back door, yelling, jumped into her car, and locked the doors. Craig followed her and, with her keys, unlocked the passenger side door. Craig got into the passenger side of the front seat, grabbed Gallahar's wrist, and stated, "Okay, bitch, you're driving." (R. 105.) Gallahar jerked away from Craig, jumped out of the car, and ran. Craig drove away from the scene of the crime in Gallahar's car. Craig was arrested in Kentucky several days later in Gallahar's car. Gallahar later picked Craig out of a photographic lineup.
On appeal, Craig puts forth four arguments, and we address each in turn. For the reasons below, we reverse one of Craig's convictions and remand this cause for resentencing.
 I. The Uniform Mandatory Disposition of Detainers Act
First, Craig argues that the trial court erred by denying his two motions to dismiss the indictments against him based on the State's noncompliance with the Uniform Mandatory Disposition of Detainers Act ("UMDDA"). See § 15-9-81, Ala. *Page 1253 
Code 1974. Section 15-9-81, Article III(a), provides:
 "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided, that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decision of the state parole agency relating to the prisoner."
The State of Alabama received the UMDDA paperwork on Craig on April 15, 2002. The trial court held a pretrial status conference on July 8, 2002, at which the State and defense counsel were present; however, the trial court did not reach the case on the docket. The trial court held another pretrial status conference on August 27, 2002. The case was passed on without objection from trial counsel. On or about September 25, 2002, the assistant district attorney requested of trial counsel — outside of court — that Craig sign a waiver of the 180-day deadline, but Craig refused to do so. A pretrial conference was conducted on October 3, 2002, and the trial was scheduled for November 4, 2002. The 180-day period under the UMDDA expired on October 12, 2002.
On October 24, 2002, Craig filed a motion to dismiss the two charges against him; he filed another motion to dismiss regarding only one of the charges on November 4, 2002. The trial court held a hearing on the motions on November 4, 2002, at the conclusion of which it denied the motions, stating, among other things, that it had "no remembrance of a 180-day period [issue] being raised at [the] October 3rd pretrial." (R. 38.)
We addressed a similar issue in Glover v. State, 599 So.2d 79
(Ala.Crim.App. 1992). The appellant in Glover was given two opportunities to object to the continuance of the trial, but did not. Craig, too, had such opportunities, and, in fact, had been reminded of the impending deadline by the State, but chose not to raise the issue before the trial court.[1] In Glover, this Court stated:
 "[T]here is evidence that the appellant waived the 180-day limitation by failing to object to the continuances.
 "`[W]e find that appellant waived the 180-day limitation. In Gillard v. State, 486 So.2d 1323, 1327 (Ala.Cr.App. 1986), we find the following: "We are inclined toward the majority view that the rights afforded a prisoner under the agreement do not rise to *Page 1254 
the level of constitutionally guaranteed rights and can be waived." See also Toro v. State, 479 So.2d 298 (Fla.Dist.Ct.App. 1985); Pethtel v. State, 427 N.E.2d 891 (Ind.App. 1981). Cf. Tombrello v. State, 484 So.2d 1190 (Ala.Cr.App. 1985) (wherein the court held that the appellant, by pleading guilty, waived the nonjurisdictional defect of a violation of the Act); Davis v. State, 469 So.2d 1348 (Ala.Cr.App. 1985) (same).
 "`As noted above, on January 5, 1987, the court set appellant's trial for the March 16, 1987, term of court, and on February 10, 1987, the court set appellant's trial for the "next criminal jury docket," a known and ascertainable date. Appellant had different counsel on these two occasions. Significantly, we can only conclude from the record that both attorneys neither objected to the trial date at the time it was set nor objected during the days remaining under the 180-day time limit. If either had done so, the trial court could have set an appropriate trial date or granted a "necessary or reasonable continuance." Instead of putting the court on notice, appellant waited until the 180-day time limit had lapsed.
 "`We construe appellant's silence, on both occasions when the trial court set the trial date, to be his acquiescence. Pethtel, 427 N.E.2d at 894. We find like treatment in Scrivener v. State, 441 N.E.2d 954, 956 (Ind. 1982), where 35 days before the 180-day period expired, the trial court set the cause for trial 29 days beyond the 180-day period. The court, in adopting Pethtel, held that the appellant's failure to object to the trial date when it was set, on or before the expiration of the 180-day period, precluded him from having the information dismissed. See also State v. McGann, [126 N.H. 316,] 493 A.2d [452] at 456 [(1985)].'
 "Saffold [v. State], 521 So.2d [1368,] 1372 [(Ala.Crim.App. 1987)]."
Glover, 599 So.2d at 81-82.
Because Craig had the opportunity to do so, but chose not to object to the trial date at the time it was set or during the remaining days under the 180-day time limit, that is, because he failed to timely object to the two continuances ordered by the trial court and to the court's setting the case for trial 23 days beyond the 180-day period mandated by the UMDDA, he has waived this issue.
 II. Double Jeopardy
Craig next argues that the trial court erred by denying his "Motion to Require [the] State to Elect [a] Charge." (C. 47.) Craig argues on appeal, as he did at trial, that he robbed only one person, albeit twice, and that, therefore, "double jeopardy principles are implicated." (C. 47.) The State does not address this argument in its brief.
As was the case in Girard v. State, 883 So.2d 714, 715
(Ala.Crim.App. 2002), Craig's motion to the trial court was untimely made, because he did not make the motion at or before arraignment, and the trial court did not set a later date for such motions. See Rule 15.3(a)(1), Ala. R.Crim. P. Also as inGirard, Craig argued the merits of his motion to the trial court, and, in response, the State did not object to the motion as untimely. Because the trial court denied the motions on the merits, this Court cannot procedurally bar this issue from appellate review. Girard, 883 So.2d at 715.
 "The constitutional guarantee against double jeopardy protects a defendant from being subjected to multiple punishments *Page 1255 
for the same offense. This guarantee bars the conviction of a defendant for two separate counts of first-degree robbery where the evidence adduced at trial tended to show that the defendant committed only one act of robbery against one victim. Moore v. State, 709 So.2d 1324 (Ala.Crim.App. 1997)."
Young v. State, 724 So.2d 69, 73 (Ala.Crim.App. 1998).
 "This is not a case where the same act or transaction constitutes a violation of two distinct statutory provisions. See Blockburger v. United States, 284 U.S. 299[, 52 S.Ct. 180, 76 L.Ed. 306] (1932). . . . The pertinent inquiry in deciding whether [these convictions are] acceptable in the face of constitutional guarantees against double jeopardy then becomes defining the correct unit of prosecution. Bell v. United States, 349 U.S. 81[, 75 S.Ct. 620, 99 L.Ed. 905] (1955).
 "`"A single crime cannot be divided into two or more offenses and thereby subject the perpetrator to multiple convictions for the same offense. Const. of 1901, Art. I, § 9; U.S. Const. Amend. V." Ex parte Darby, 516 So.2d 786, 787 (Ala. 1987). Such question of double jeopardy is determined by the following principles:
 "`"It has been aptly noted that `the Blockburger [v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),] test is insufficient where . . . the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction.' Rashad v. Burt, 108 F.3d 677 (6th Cir. 1997). This is because when `a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied.' State v. Adel, 136 Wash.2d 629, 965 P.2d 1072
(1998). The `appropriate inquiry' in such a case `asks what "unit of prosecution" was intended by the Legislature as the punishable act. . . . The inquiry requires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor.' Commonwealth v. Rabb, 431 Mass. 123, 725 N.E.2d 1036 (2000) (concluding that allegedly multiple drug possessions justify multiple charges if the possessions are sufficiently differentiated by time, place or intended purpose, the case here regarding defendant's possession of drugs at his residence for immediate sale and his possession of drugs at motel for future sales)."
 "`4 Wayne R. LaFave et al., Criminal Procedure § 17.4(b), 2001 Pocket Part n. 66 (2d ed. 1999). See also Project, "Twenty-Ninth Annual Review of Criminal Procedure," 88 Geo. L.J. 879, 1293 (2000) ("when the government seeks to prove that a single act or occurrence results in multiple violations of the same statute, the rule of lenity requires only one punishment unless legislative intent to impose multiple punishments is shown").'
 "Townsend v. State, 823 So.2d 717, 722
(Ala.Crim.App. 2001) (footnote omitted [in Girard])."
Girard, 883 So.2d at 715-16.
"`Robbery is an offense against the person. . . .'" Ex parteWindsor, 683 So.2d 1042, 1046 (Ala. 1996) (quoting Windsor v.State, 683 So.2d 1027, 1032 (Ala.Crim.App. 1994)). That is, the victim in *Page 1256 
this case was Gallahar, not the dry-cleaning business, although some of the property taken belonged to the business. Proof of an actual taking of property is not required to sustain a conviction for robbery. See Cook v. State, 582 So.2d 592 (Ala.Crim.App. 1991). Thus it is the use of force, or the threat of the use of force, against the person that constitutes the crime; therefore, the unit of prosecution is the act of violence against the person. Thus, the number of charges against the defendant isnot determined by the number of pieces of property actually taken, as was done in this case.[2] Cf. Connolly v.State, 539 So.2d 436, 441-42 (Ala.Crim.App. 1988) ("The State could not convert a single theft of various items of property into separate offenses by alleging the theft of different items in separate indictments. All the property was taken during the same transaction and constituted one offense. Such is not permitted.").
In Young, this Court reasoned:
 "In the present case, the court differentiated the two counts of robbery as follows:
 "`And the State is maintaining that the first robbery charge is in regard to the $42 or $43 that [V.E.] said was taken from his wallet. And then that the other robbery charge was the going to the, I believe, the front bedroom, seeking money on that occasion.'
"(R. 416.)
"The State presented evidence of one [robbery], but not two separate robberies. The evidence tended to show that Young committed one continuous act of robbery against V.E., using a deadly weapon while committing a theft. The fact that Young forced V.E. into another room does not create a second robbery. The trial court erred in instructing the jury that it did. SeeRolling v. State, 673 So.2d 812, 815 (Ala.Crim.App. 1995)."
724 So.2d at 73.
The evidence in this case, like the evidence in Young, shows that Craig committed one continuous act of robbery against Gallahar. For the reasons stated above, the fact that Craig took property from both Gallahar and from the dry-cleaning business does not create two separate robbery offenses. Therefore, because Craig was twice placed in jeopardy by being indicted for and convicted of two separate charges of first-degree robbery when he in fact committed only one crime against one victim, one of Craig's convictions for first-degree robbery is to be vacated, along with the accompanying sentence.
 III. Sentencing
Third, Craig takes issue with the propriety of his sentence under the Habitual Felony Offender Act (HFOA). Specifically, he argues that none of his prior convictions should have been used to enhance the sentence in this case. Craig's sentence was enhanced by four prior convictions from Kentucky: two trafficking convictions from 2001 and two first-degree robbery convictions from 1999.
We address the two arguments in turn.
A. The 2001 Trafficking Convictions
Craig argues that two of his prior felony convictions should not have been used to enhance his sentence because the crime underlying the conviction at issue here was committed before he was adjudicated guilty in 2001 of the two trafficking crimes. Craig raised this argument pretrial, *Page 1257 
during sentencing, and in his postjudgment motion. In its brief on appeal, the State agrees.
The two prior felony convictions in question were for trafficking in cocaine and the offenses were committed in Kentucky in 2001 when Craig was 19 years old. The record contains the "Judgment and Sentence on Plea of Guilty" (C. 108), in which the trial court overseeing the two prior convictions ordered the following:
 "These offenses were committed when the Defendant was 19 years of age. The Defendant's date of birth is 11-20-81.
 "On the 23rd day of May, 2001, having appeared in open court with counsel, . . . with the Commonwealth's Attorney, the Defendant withdrew a plea of Not Guilty and entered a plea of Guilty. Finding that the Defendant understands the nature of the charges against him/her including the possible penalties, that the Defendant knowingly and voluntarily waives his/her right to plead innocent, to be tried by a jury to compel the attendance of witnesses on the Defendant's behalf, to confront and cross-examine witnesses and to appeal to a higher court, and finding further that the Defendant understands and voluntarily waives his/her right not to incriminate himself/herself and finding that the plea is voluntary, the Court accepts the plea.
 "On the 1st day of August, 2001, the Defendant appeared in open court with counsel of record, and the Court inquired of the Defendant and counsel whether any legal cause existed to show why judgment should not be pronounced, and afforded the Defendant and counsel the opportunity to make any statements [o]n the Defendant's behalf and to present any information in mitigation of punishment, and the Court having informed the Defendant and counsel of the factual contents and conclusions contained in the written report of the present investigation prepared by the Division of Probation and Parole and provided counsel with a copy of the report although not the sources of the confidential information, the Defendant agreed with the factual contents of said report. Having given due consideration to the written report by the Division of Probation and Parole, and to the nature and circumstances of the crime, and to the history, character, condition of the Defendant, this court is of the opinion:
 "that imprisonment is necessary for the protection of the public. . . .
"No sufficient cause having been shown why judgment should not be pronounced, IT IS ADJUDGED BY THIS COURT, that the Defendantis Guilty of the following charges:
 "Trafficking in a Controlled Substance Within 1000 Yards of a School — Five (5) Years. Trafficking in a Controlled Substance First-Degree, First Offense, Cocaine — Five (5) Years Concurrent. Possession of Drug Paraphernalia — 12 Months Concurrent."
(C. 108-09.) (Emphasis added.)
In Summerhill v. State, 420 So.2d 804 (Ala.Crim.App. 1982), the Court remanded Summerhill's cause for the trial court to determine whether the enhancement of Summerhill's sentence under the HFOA was appropriate. The Court could not determine from the record before it whether the charged crime in that case had been committed after the commission of the prior felony convictions invoked by the State, and it could not determine whether Summerhill had been adjudicated guilty of the prior felonies before the judgment of conviction was entered and the sentence imposed in that case. Although the record on submission to the Court contained notations regarding the entry of the plea and the imposition of the sentence in the prior *Page 1258 
felony convictions, it did not contain any adjudication of guilt. 420 So.2d at 806. The record also did not contain the date of the offense of the charged felony, but the Court could surmise from the entirety of the record that the offense had occurred before sentencing in the prior felonies. With the new offense having occurred sometime after the entry of the plea and before sentencing in the prior crimes, remand was necessary to determine when the adjudication of guilt had occurred. On return to remand,Summerhill v. State, 436 So.2d 2 (Ala.Crim.App. 1983), the Court noted:
 "As the return to the order of remandment discloses (1) that prior to the judgment of conviction and sentence in the instant case defendant had been adjudged guilty of the felony charged in each of the other two cases involved and (2) that prior to his commission of the felony charged in the instant case defendant had committed the felony charged in each of the other two cases, we no longer have any concern as to the existence of either fact."
436 So.2d at 3. Summerhill nonetheless argued on return to remand that his sentence had been improperly enhanced by the use of the prior felony convictions because, at the time he committed the charged crime, he had not yet been sentenced on his prior felonies and, without sentencing, there were no convictions. From the findings of the trial court, and from prior caselaw, the Court reasoned and held:
 "We now hold, as we indicated in our opinion on original submission that we would likely hold, in firm adherence to Watson v. State, [392 So.2d 1274
(Ala.Crim.App. 1980)], and Burgess v. State, [412 So.2d 298 (Ala.Crim.App. 1982)], that a previous `adjudication' of guilt of a felony constitutes a previous `conviction' of a felony whenever the term `previous conviction' of a felony, or its equivalent, is used in the Habitual Felony Offenders law of Alabama."
436 So.2d at 5. Thus the Court held that, because the record indicated that Summerhill had been adjudicated guilty of his two prior felonies before committing the felony in that case, even though he had not been sentenced for those two prior felonies before he committed the felony in that case, those adjudications of guilt were sufficient to constitute prior convictions under the HFOA. See also Congo v. State, 477 So.2d 511 (Ala.Crim.App. 1985) (quoting Summerhill v. State, 436 So.2d 2 (Ala.Crim.App. 1983)).[3] Sentencing, then, is not necessary to make a guilty plea, which includes an adjudication of guilt, a prior felony conviction for purposes of the HFOA.
The crime in this case was committed on July 9, 2001, between the day Craig entered his plea and the day he was adjudicated guilty and sentenced. Although in most cases that come before this Court the trial court adjudicates the defendant guilty *Page 1259 
at the time he or she enters a plea of guilty, this is not always the case, and "each case must be evaluated on its facts to determine whether an adjudication of guilt was proved." Morganv. State, 733 So.2d 940, 943 n. 2 (Ala.Crim.App. 1999). According to the record before us, Craig was not adjudicated guilty on the two trafficking convictions until he was sentenced for those crimes, that is, after he had already committed the crime for which he is charged here; therefore, he was not convicted of the two trafficking convictions until after he had committed the crime in this case. Accordingly, the two trafficking convictions are not "prior" convictions in terms of the present felony conviction and should not have been used to enhance his sentence in this case.
B. The 1999 First-Degree Robbery Convictions
Craig argues that his two 1999 convictions, both of which were committed when he was 15 years old, could not have been used to enhance the sentence in this case because they are juvenile convictions and, therefore, ineligible for consideration under the HFOA. See §§ 12-15-72(a) and 15-19-7, Ala. Code 1975, (youthful offender adjudication and juvenile adjudication are not convictions). See also Phillips v. State, 462 So.2d 981, 986
(Ala.Crim.App. 1984). Craig pursued these arguments pretrial, at the beginning of second day of trial, at sentencing, and in his postjudgment motion.
In response to this argument, the State first argues that Craig's sentence was properly enhanced because the State offered evidence of four other prior convictions from Kentucky. The State cites us to the clerk's record, pages 116-23. We note that the record indicates that those four convictions occurred on July 14, 2001, approximately five days after the robbery of the dry-cleaning business involved in this case. These convictions were secured after Craig escaped, in Gallahar's automobile, from the scene of the crime in Alabama and was later apprehended in Kentucky in Gallahar's car. Because those crimes were committedafter the crime in this case, the resulting convictions could not have been used as prior convictions to enhance the sentence in this case. See Summerhill, supra. The State also argues that, because Craig was sentenced as an adult, we should allow the prior convictions to be used for enhancement purposes under the HFOA.
Craig was originally indicted in Kentucky on six charges, but he pleaded guilty to only three, and the trial court dismissed the other three charges. In adjudicating these felonies, the Kentucky trial court entered an order, which states, in pertinent part:
 "These offenses were committed when the Defendant was 15 years of age. The Defendant's date of birth is November 29, 1981.
 "On the 14th day of April, 1999, having appeared in open Court with counsel . . ., by agreement with the Commonwealth's Attorney, the Defendant withdrew a plea of not guilty and entered a plea of guilty. Finding that the Defendant understands the nature of the charges, including possible penalties, that the Defendant knowingly and voluntarily waives any right to plead innocent, to be tried by a jury, to compel the attendance of the witnesses on his behalf, to confront and cross-examine witnesses and to appeal to a higher court, and finding further that the Defendant understands and voluntarily waives any right not to self-incriminate, any right to be represented by counsel at each stage of the proceedings, and, if necessary, to have counsel appointed for representation, *Page 1260 
and finding that the plea is voluntary, the Court accepts the plea.
 "On the 12th day of May, 1999, the Defendant appeared in open court with counsel of record, and the Court inquired of the Defendant and counsel whether any legal cause existed to show why judgment should not be pronounced and afforded the Defendant and counsel and opportunity to make statements [o]n the Defendant's behalf and to present any information in mitigation of punishment, and the Court having informed the Defendant and counsel of the factual contents and conclusions contained in the written report of the presentence investigation prepared by the Justice Cabinet, Department of Juvenile Justice, and provided counsel with a copy of the report although not the sources of the confidential information, the Defendant agreed with the factual contents of said report. Having given due consideration to the written report by the Justice Cabinet, Department of Juvenile Justice, and to the nature and circumstances of the crime, and to the history, character, and condition of the Defendant, this Court is of the opinion[t]hat imprisonment is necessary for the protection of the public because[p]robation, probation with an alternative sentencing plan, or conditional discharge would unduly depreciate the seriousness of the Defendant's crime.
 "No sufficient cause having been shown why judgment should not be pronounced, IT IS ADJUDGED BY THIS COURT that the Defendant is guilty of the following charge(s):
 "Robbery, First Degree — two counts; Wanton Endangerment, First Degree
"AND IS SENTENCED TO:
 "Counts 1, 2 and 3 having been dismissed; ten years on Count 4; ten years on Count 5; five years on Count 6 to run concurrently for a total of ten years.
 "It is further ORDERED that the Defendant be delivered to the custody of the Corrections Cabinet, Juvenile Division, at such location within this Commonwealth as the Cabinet shall designate unless specified otherwise above."
(C. 127-28.)[4]
The following statutes, some of which were considered by trial court, govern Craig's cases in Kentucky:
 "(4) Any other provision of KRS Chapters 610 to 645 to the contrary notwithstanding, if a child charged with a felony in which a firearm, whether functional or not, was used in the commission of the offense had attained the age of fourteen (14) years at the time of the commission of the alleged offense, he shall be transferred to the Circuit Court for trial as an adult if, following a preliminary hearing, the District Court finds probable cause to believe that the child committed a felony, that a firearm was used in the commission of that felony, and that the child was fourteen (14) years of age or older at the time of the commission of the alleged felony. If convicted in the Circuit Court, he shall be subject to the same penalties as an adult offender, except that until he reaches the age of eighteen (18) years, he shall be confined in a facility or program for juveniles or for youthful offenders, unless the provisions of KRS 635.025 apply or unless he is released pursuant to expiration of sentence or parole, and at age eighteen (18) he shall be returned to the sentencing *Page 1261 
Circuit Court for proceedings consistent with KRS 640.030(2)."
Ky.Rev.Stat. Ann. § 635.020 (Michie 2003).
Additionally, "[n]o youthful offender shall be subject topersistent felony offender sentencing under the provisions of KRS532.080 for offenses committed before the age of eighteen (18)years," Ky.Rev.Stat. Ann. § 640.040(2) (Michie 1999) (emphasis added), and "a previous felony conviction," as defined under the Persistent Felony Offender Sentencing Statute, "is a conviction of a felony in this state or conviction of a crime in any other jurisdiction provided . . . [t]hat the offender was over the ageof eighteen (18) years at the time the offense wascommitted. . . ." Ky.Rev.Stat. Ann. § 532.080(2)(b) (Michie 1999) (emphasis added).
The State bears the burden of proving, beyond a reasonable doubt, the existence of a viable prior felony conviction for use as enhancement under the HFOA. See Grier v. State,825 So.2d 873 (Ala.Crim.App. 2001) (citing Rule 26.6(b)(3)(iii), Ala. R.Crim. P.).
We note that we do not know and cannot guess whether Craig would have remained under the jurisdiction of the juvenile court if his case had arisen in Alabama, see §§ 12-15-33(a), Ala. Code 1975 (requiring that a defendant be transferred to juvenile court if it is determined that the offense was committed while the defendant was a child), and 12-15-1(3), Ala. Code 1975 (defining a child as an individual under 18), or whether the district attorney would have moved the circuit court to transfer Craig for him to be tried as an adult pursuant to § 12-15-34(a), Ala. Code 1975. Additionally, Kentucky and Alabama have systems for treating juvenile and youthful offenders that are in some ways alike and, in other ways, quite different, as we will discuss below. Thus, an attempt to compare the prior offense of a juvenile defendant in Kentucky with the way that offense and defendant would have or could have been handled in Alabama is virtually impossible.
The relevant inquiry, then, is whether, given the totality of the circumstances, Craig was afforded the protections of a juvenile justice system or whether he was subjected to an adult justice system as his case was tried in Kentucky. That is, in order for Craig's prior offenses to constitute felony convictions and, therefore, be available to enhance his sentence in the present case, a court must find that Craig was, on the whole, subjected to an adult justice system, rather than being treated as a juvenile or youthful offender.[5]
The trial court considered Kentucky law, the indictments against Craig, and his treatment at sentencing to determine that the prior convictions were felony convictions garnered as an adult and, therefore, appropriate for use for enhancement purposes *Page 1262 
under the HFOA.[6] The trial court relied heavily and almost exclusively on Ky.Rev.Stat. Ann. § 635.020(4) (Michie 2003). We review the trial court's decision, a decision involving a question of law, de novo.
First, although we agree that § 635.020(4) specifically provides that, in a case such as Craig's, the juvenile is to be tried as an adult, rather than as a youthful offender as the statute provides elsewhere, we note that "[a] `youthful offender' is defined as `any person regardless of age, transferred to Circuit Court under the provisions of KRS Chapter 635 or 640 and who is subsequently convicted in Circuit Court.' KRS 600.020(56)." Gourley v. Commonwealth, 37 S.W.3d 792, 794
(Ky.Ct.App. 2001). Even though a district court automatically waives jurisdiction when it transfers a juvenile to the circuit court pursuant to § 635.020(4), such juveniles remain classified "`youthful offenders' eligible for the ameliorative sentencing provisions of KRS Chapter 640." Britt v. Commonwealth,965 S.W.2d 147, 149-50 (Ky. 1998) ("[W]e simply hold that KRS635.020(4) does not create a new category of adult offender that precludes children transferred to circuit court pursuant to it from eligibility for the ameliorative provisions of KRS 640.040. Rather, we believe, as explained below, that subsection (4) of KRS 635.020 was designed merely to facilitate transfer of juveniles accused of committing a felony with a firearm to the circuit court by bypassing the proof required under KRS 640.010.").[7] Therefore, when he was convicted, Craig was classified as a youthful offender under Kentucky law.
Second, Craig's presentence report was prepared by the Justice Cabinet, Department of Juvenile Justice, as is required for youthful offenders prior to sentencing, pursuant to Ky.Rev.Stat. Ann. § 640.030(1). See also Gourley, supra (holding that the circuit court erred in directing the Division of Probation and Parole to prepare the presentence report, rather than directing the Department of Juvenile Justice to do so, and that such error was prejudicial and reversible).
Third, although the sentence imposed in Craig's case did exceed three years, the limit of a sentence received by a youthful offender in Alabama, see § 15-19-6, Ala. Code 1975, we note that Kentucky allows a youthful offender to be sentenced to the same amount of prison time as an adult, but holds the youthful offender in a juvenile facility until he or she reaches 18 years of age.[8] The youthful offender then *Page 1263 
may have his sentence probated upon return to the sentencing court. See Gourley, 37 S.W.3d at 795 ("In summary, while a youthful offender is subject to the same penalty as an adult, he is nonetheless eligible for the ameliorative sentencing procedures authorized in [Ky.Rev.Stat. §] 640.030. The court has broad discretion in dealing with whether to probate or conditionally discharge the juvenile, to send him for treatment, or to commit him to an adult correctional system upon attainment of the age of majority.").
Fourth, upon sentencing, Craig was ordered delivered to the Corrections Cabinet, Juvenile Division, because he was not yet 18 years old when he was sentenced in 1999, rather than to the custody of the Department of Corrections, as would be an adult offender. See, e.g., C. 110, 121.
Finally, we note that, under Kentucky law, because Craig was classified as a youthful offender and because he was younger than 18 years old when he committed the crimes, his 1999 prior convictions could not have been used to enhance a later sentence.See Ky.Rev.Stat. Ann. §§ 640.040(2) and 532.080 (Michie 1999).
Thus, viewing the totality of the circumstances, we conclude that Craig was treated as a youthful offender in the Kentucky judicial system. Therefore, his convictions there were youthful offender convictions and not appropriate for use under Alabama law for enhancement purposes under the HFOA. Therefore, we hold that the trial court erred in using Craig's 1999 Kentucky convictions to enhance his sentence in the case at hand.
For the reasons stated above, we affirm one first-degree robbery conviction and reverse one first-degree robbery conviction; we remand this cause for the trial court to vacate that reversed conviction. On remand, the circuit court is to resentence Craig pursuant to the holdings in this opinion, that is, without using the 2001 Kentucky trafficking convictions and the 1999 Kentucky robbery convictions to enhance Craig's sentence under the HFOA.
ON REHEARING EX MERO MOTU; OPINION OF MARCH 26, 2004, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.* *Page 1264 
McMILLAN, P.J., and SHAW and WISE, JJ., concur. BASCHAB, J., concurs in the result.
[1] Craig's trial counsel stated that he did not "know what happened . . . at those pretrials." (R. 30.)
[2] This is not a case where the indictment charged, in a single count, alternative methods of proving the same crime, which is a permissible practice unaffected by the decision in this case. See, e.g., Smith v. State, 797 So.2d 503
(Ala.Crim.App. 2000).
[3] We note that this is not a case where the record is devoid of any indication of an adjudication of guilt, but indicates that the defendant entered a plea and was sentenced for the prior felonies, both acts occurring before the commission of the new felony. See Morgan v. State, 733 So.2d 940, 943 (Ala.Crim.App. 1999) ("The requirement that there has been an `adjudication of guilt' does not require exact and specific terminology in order to satisfy the requirements of the HFOA. Giving this statute its practical application, where the record shows that the appellant pleaded guilty in court in the presence of his attorney and a sentencing order was then filed, as acknowledged by the circuit court, this must be construed as an adjudication of guilt in order `to prevent absurdity, hardship, or injustice, and to favor public convenience.' Baker v. State, 483 N.E.2d 772, 774
(Ind.App. 1985)." (Footnote omitted.)).
[4] The indictment in the record indicates that Craig was armed with a weapon during the robberies he committed as a juvenile in Kentucky.
[5] In State v. Beal, 311 N.C. 555, 319 S.E.2d 557 (1984), the North Carolina Supreme Court was called upon the determine the propriety of enhancing a defendant's sentence with a prior youthful offender conviction from Alabama. The Court considered the North Carolina capital punishment statute, the Alabama Youthful Offender Act, and its underlying purpose in deciding that the sentence had been improperly enhanced. The Court followed similar lines of reasoning as we do here, stating that it was "guided by the explicit language of Ala. Code § 15-19-7(a) which provides, in pertinent part, that an adjudication as a youthful offender `shall not be deemed a conviction of crime; provided, however, that if he is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered'" and by caselaw construing § 15-19-7(a). 311 N.C. at 562,319 S.E.2d at 564. In deciding to hold the enhancement improper, the Court found Alabama caselaw "very persuasive authority which should be given substantial weight." 311 N.C. at 563,319 S.E.2d at 565. We do the same in this case with Kentucky caselaw.
[6] The trial court also determined that the prior offenses in question could be used for impeachment purposes.
[7] In Alabama, the automatic transfer statute, § 12-15-34.1, Ala. Code 1975, provides that the case shall be transferred for the juvenile to be tried as an adult if a juvenile, 16 years or older at the time of the offense, commits a capital offense, a Class A felony, an offense using a weapon, an offense causing death or serious physical injury, an offense using a dangerous instrument against certain officials, or trafficking. The discretionary transfer statute, § 12-15-34(h), Ala. Code 1975, allows the juvenile court, upon motion of the district attorney, to transfer a juvenile, 14 years or older at the time of the offense, "for criminal prosecution." Section 12-15-34(h) specifically provides that such a transferred juvenile may not be tried as a youthful offender and shall be sentenced as an adult if he committed one of the crimes listed in the automatic transfer statute.
[8] "A youthful offender, who is convicted of, or pleads guilty to, a felony offense in Circuit Court, shall be subject to the same type of sentencing procedures and duration of sentence, including probation and conditional discharge, as an adult convicted of a felony offense, except that:
 "(1) The presentence investigation required by KRS 532.050 shall be prepared by the Department of Juvenile Justice or by its designated representative;
 "(2) Except as provided in KRS 640.070, any sentence imposed upon the youthful offender shall be served in a facility or program operated or contracted by the Department of Juvenile Justice until the expiration of the sentence, the youthful offender is paroled, the youthful offender is probated, or the youthful offender reaches the age of eighteen (18), whichever first occurs. The Department of Juvenile Justice shall take custody of a youthful offender, remanded into its custody, within sixty (60) days following sentencing. If an individual sentenced as a youthful offender attains the age of eighteen (18) prior to the expiration of his sentence, and has not been probated or released on parole, that individual shall be returned to the sentencing court. At that time, the sentencing court shall make one (1) of the following determinations:
 "(a) Whether the youthful offender shall be placed on probation or conditional discharge;
 "(b) Whether the youthful offender shall be returned to the Department of Juvenile Justice to complete a treatment program, which treatment program shall not exceed a period in excess of six (6) months. At the conclusion of the treatment program or at the expiration of six (6) months, whichever first occurs, the individual shall be returned to the sentencing court for a determination under paragraph (a) or (c) of this subsection; or
 "(c) Whether the youthful offender shall be incarcerated in an institution operated by the Department of Corrections. . . ."
Ky.Rev.Stat. Ann. § 640.030(1) and (2) (Michie 2003).
* Note from the reporter of decisions: On June 18, 2004, the Court of Criminal Appeals denied the State's application for rehearing, without opinion. The Court of Criminal Appeals' docket sheet contains the following entry as part of its judgment line entered on June 22, 2004: "Decision of 6/18/04 withdrawn."