JOINER, Judge.
Winston Gale Strickland was convicted of two counts of first-degree robbery, a violation of § 13A-8-41, Ala.Code 1975. The circuit court sentenced Strickland to 25 years’ imprisonment on each conviction and ordered that the sentences run concurrently. Additionally, the circuit court ordered Strickland to pay a $50 fíne, a $50 crime-victims-compensation assessment on each conviction, court costs, and $953 in restitution.
At trial, the State’s evidence tended to show the following. On March 19, 2009, Jana Kennedy was working at the Chevron Food Mart located in Madison County. At approximately 4:45 a.m., Kennedy was in the store along with her two friends— Cameron Rothwell and Brent Calzinski. Around that time, Kennedy was walking toward the women’s restroom when she heard what turned out to be three men enter the store and say “hey” in what she later described as a “mean tone.” Kennedy then heard a “shotgun click,” and she ran behind the counter. Kennedy attempted to push the panic button located under the counter to alert the police, but she was unsuccessful. The three men told her to “[o]pen the register.” The first man was armed with a shotgun and stayed in front of the counter, the second man jumped over the counter next to Kennedy, and the third man followed her through the door behind the counter. The men continued to tell Kennedy to “[ojpen the register” and also told her to “hurry up.” The man who jumped over the counter struck Kennedy in the back of the head because she could not open the register quickly. The man with the shotgun aimed it at Rothwell and Calzinski while Kennedy attempted to open the register.[1] Kennedy stated that she was scared, “because you think if you do something wrong, you can lose one of your best friends.” Eventually, Kennedy opened the register, and the three men took the money out of the register. The men then told Kennedy to open the safe. Kennedy, however, did not have the keys to open the safe. The men then took packs of cigarettes from behind the counter and also took Kennedy’s purse, which contained her cell phone, her money, and her keys. Before the men left the store they used a milk crate to knock the security camera off the wall. After the men left the store, Kennedy asked Roth-well and Calzinski to lock the doors and she telephoned her boss. Rothwell then telephoned the police. When the police arrived, Kennedy, Rothwell, and Calzinski told them what happened and gave them a description of the three men.
*181 Deputy Shawn McClure of the Madison County Sheriffs Office was assigned to investigate the robbery. According to Deputy McClure, the case went unsolved for approximately one month until a Huntsville Police Officer told Deputy McClure that Brandon Bolin may have been involved with the robbery. On April 13, 2009, Deputy McClure interviewed Bo-lin. During the interview, Bolin implicated himself, Derek Watts, Jonte Alexander, and Strickland in the robbery that occurred at the Chevron Food Mart on March 19, 2009.
On April 13, 2009, the Madison County Sheriffs Office took Strickland into custody and questioned him regarding Bolin’s assertions. Deputy McClure read Strickland his Miranda[2] warnings. Strickland indicated that he understood his rights and that he wished to provide a statement regarding the robbery that occurred on March 19, 2009. Strickland told Deputy McClure that he was at his house with his girlfriend, Watts, Alexander, Bolin, and Tekita Marquita. According to Strickland, at some point, they decided to go “hit a lick.”[3] Strickland told Deputy McClure that, initially, he and his girlfriend did not want to go with the others. Strickland told Deputy McClure, however, that he ended up “rolling with them just to see what went down.” Strickland told Deputy McClure that they drove to the store and that Bolin, Alexander, and Watts went into the store to rob it. Strickland denied going into the store. Deputy McClure confronted Strickland and told him that he did not believe that Bolin went into the store because the three “subjects were black” and Bolin is white. Deputy McClure then confronted Strickland with photographs of the three individuals taken by the security camera in the store. Strickland then admitted that he went into the store with Alexander and Watts. Strickland identified himself in the photographs as the man who jumped over the counter and punched Kennedy in the back of the head. Strickland told McClure that Alexander was the individual who had the shotgun during the robbery.
After the State rested its case-in-chief, Strickland moved for a judgment of acquittal, which was denied. Both the State and Strickland then presented closing arguments, and the circuit court charged the jury. The jury returned a guilty verdict on the two counts of first-degree robbery.
On appeal, Strickland argues the following: (1) that his two convictions for first-degree robbery arising out of the same incident violate the prohibition against double jeopardy; (2) that the State’s evidence was insufficient to support his convictions; (3) that the indictment was defective because, he says, it failed to define the essential element of theft; and (4) that a material variance existed between the indictment and the proof offered at trial because, he says, the indictment alleged that he was armed and the evidence at trial showed that he was unarmed.
Strickland first argues that his two convictions for first-degree robbery violate the prohibition against double jeopardy. Specifically, Strickland contends that, although property was taken from both Kennedy and the Chevron Food Mart, only one act of violence occurred and, therefore, he says, the State could not separate the offense into two first-degree-robbery charges.
*182 The State contends that Strickland has failed to preserve this argument for review because, it says, Strickland did not first raise this argument in the circuit court. This Court has held, however, that the issue raised in Strickland’s argument presents a possible jurisdictional defect, which this Court has a duty to notice. See, e.g., Brooks v. State, 76 So.3d 275, 285 (Ala.Crim.App.2011) (citing Williams v. State, 10 So.3d 1083 (Ala.Crim.App.2008)). Thus, regardless of Strickland’s failure to first raise this issue in the circuit court, we must address this issue on appeal.
Strickland was indicted by the Madison County Grand Jury as follows:
“Count 5
“The Grand Jury of said County charge, that before the finding of this Indictment, Winston Gal[e] Strickland, whose name is unknown to the Grand Jury other than as stated, did, in the course of committing a theft of property, to-wit: One (1) purse and contents, the property of, to-wit: Jana Kennedy, use force against the person of Jana Kennedy, with the intent to overcome her physical resistance or physical power of resistance or to compel acquiescence to the taking of or escaping with the property, while the said Winston Gal[e] Strickland, whose name is unknown to the Grand Jury other than as stated, was armed with a deadly weapon or dangerous instrument, to-wit: a shotgun, in violation of Section 13A-8-41 of the Code of Alabama, against the peace and dignity of the State of Alabama.
“Count 6
“The Grand Jury of said County charge, that before the finding of this Indictment, Winston Gal[e] Strickland, whose name is unknown to the Grand Jury other than as stated, did, in the course of committing a theft of property, to-wit: lawful currency of the United States, a further description of which amount and denomination being otherwise unknown to the Grand Jury, the property of, to-wit: Chevon [sic] Food Mart, use force against the person of Jana Kennedy, with the intent to overcome her physical resistance or physical power of resistance or to compel acquiescence to the taking of or escaping with the property, while the said Winston Gal[e] Strickland, whose name is unknown to the Grand Jury other than as stated, was armed with a deadly weapon or dangerous instrument, to-wit: a shotgun, in violation of Section 13A-8-41 of the Code of Alabama, against the peace and dignity of the State of Alabama.”
(C. 14.)
It is well settled that, in first-degree-robbery cases, “[t]he State cannot convert a single theft of various items of property from one victim into separate offenses because to do so violates the prohibition against double jeopardy; the unit of prosecution is the act of violence against the person.” Brooks, 76 So.3d at 285 (quoting Craig v. State, 893 So.2d 1250 (Ala.Crim.App.2004)).
The facts in this case are similar to those presented in Craig v. State, 893 So.2d 1250 (Ala.Crim.App.2004):
“On July 9, 2001, Paulette Gallahar was working at a dry-cleaning business when Craig entered the store, pulled out a weapon, and announced, 1 “Oh by the way, this is a robbery.... I’m taking money out of this store and I’m taking your car.”’ (R. 95.) Craig stole $45 from the cash register and forced Galla-har into the back of the store. In the back of the store, Craig took $5 and car keys from Gallahar’s purse. Craig forced Gallahar to kneel in a corner, put plastic around her head, and held a gun to her head. Another customer entered *183 the front of the store. Craig went to wait on the customer, so as to not cause any suspicion. Gallahar ran to the doorway to the front of the store and shouted, ‘ “It’s a robbery, it’s a robbery.” ’ (R. 103.) She ran out the back door, yelling, jumped into her car, and locked the doors. Craig followed her and, with her keys, unlocked the passenger side door. Craig got into the passenger side of the front seat, grabbed Gallahar’s wrist, and stated, ‘Okay, bitch, you’re driving.’ (R. 105.) Gallahar jerked away from Craig, jumped out of the ear, and ran. Craig drove away from the scene of the crime in Gallahar’s car. Craig was arrested in Kentucky several days later in Gallahar’s car. Gallahar later picked Craig out of a photographic lineup.”
893 So.2d at 1252. In Craig, this Court held:
“ ‘The constitutional guarantee against double jeopardy protects a defendant from being subjected to multiple punishments for the same offense. This guarantee bars the conviction of a defendant for two separate counts of first-degree robbery where the evidence adduced at trial tended to show that the defendant committed only one act of robbery against one victim. Moore v. State, 709 So.2d 1324 (Ala.Crim.App.1997).’
“Young v. State, 724 So.2d 69, 73 (Ala.Crim.App.1998).
“ ‘This is not a case where the same act or transaction constitutes a violation of two distinct statutory provisions. See Blockburger v. United States, 284 U.S. 299 (1932).... The pertinent inquiry in deciding whether [these convictions are] acceptable in the face of constitutional guarantees against double jeopardy then becomes defining the correct unit of prosecution. Bell v. United States, 349 U.S. 81 (1955).
“ ‘ “ ‘A single crime cannot be divided into two or more offenses and thereby subject the perpetrator to multiple convictions for the same offense. Const, of 1901, Art. I, § 9; U.S. Const. Amend. V.’ Ex parte Darby, 516 So.2d 786, 787 (Ala.1987). Such question of double jeopardy is determined by the following principles:
“ ‘ “ ‘It has been aptly noted that “the Blockburger [v. United States, 284 U.S. 299 (1932),] test is insufficient where ... the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction.” Rashad v. Burt, 108 F.3d 677 (6th Cir.1997). This is because when “a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied.” State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998). The “appropriate inquiry” in such a case “asks what ‘unit of prosecution’ was intended by the Legislature as the punishable act.... The inquiry requires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant’s favor.” Commonwealth v. Rabb, 431 Mass. 123, 725 N.E.2d 1036 (2000) (concluding that allegedly multiple drug possessions justify *184 multiple charges if the possessions are sufficiently differentiated by time, place or intended purpose, the case here regarding defendant’s possession of drugs at his residence for immediate sale and his possession of drugs at motel for future sales).’
“ ‘ “4 Wayne R. LaFave et al., Criminal Procedure § 17.4(b), 2001 Pocket Part n. 66 (2d ed.1999). See also Project, ‘Twenty-Ninth Annual Review of Criminal Procedure,’ 88 Geo. L.J. 879, 1293 (2000) (‘when the government seeks to prove that a single act or occurrence results in multiple violations of the same statute, the rule of lenity requires only one punishment unless legislative intent to impose multiple punishments is shown’).”
“ ‘Townsend v. State, 823 So.2d 717, 722 (Ala.Crim.App.2001) (footnote omitted [in Girard ]).’
“Girard [v. State ], 883 So.2d [714] at 715-16 [ (Ala.Crim.App.2002) ].
“ ‘ “Robbery is an offense against the person....”’ Ex parte Windsor, 683 So.2d 1042, 1046 (Ala.1996) (quoting Windsor v. State, 683 So.2d 1027, 1032 (Ala.Crim.App.1994)). That is, the victim in this case was Gallahar, not the dry-cleaning business, although some of the property taken belonged to the business. Proof of an actual taking of property is not required to sustain a conviction for robbery. See Cook v. State, 582 So.2d 592 (Ala.Crim.App.1991). Thus it is the use of force, or the threat of the use of force, against the person that constitutes the crime; therefore, the unit of prosecution is the act of violence against the person. Thus, the number of charges against the defendant is not determined by the number of pieces of property actually taken, as was done in this case. Cf. Connolly v. State, 539 So.2d 436, 441-42 (Ala.Crim.App.1988) (‘The State could not convert a single theft of various items of property into separate offenses by alleging the theft of different items in separate indictments. All the property was taken during the same transaction and constituted one offense. Such is not permitted.’).”
893 So.2d at 1254-56.
The evidence in this case, like the evidence in Craig, shows that Strickland, Watts, and Alexander committed one continuous act of violence against Kennedy. The fact that Strickland, Watts, and Alexander took property belonging to both Kennedy and to the Chevron Food Mart does not create two separate first-degree robbery offenses. Thus, Strickland was twice placed in jeopardy by being indicted for and convicted of two separate charges of first-degree robbery committed against one victim. Accordingly, one of Strickland’s convictions for first-degree robbery is to be vacated, along with the accompanying sentence.
This case, therefore, is due to be remanded to the circuit court with orders that the court vacate one of the convictions and sentences entered against Strickland. Due return should be made to this Court within 28 days of the release of this opinion.
Because this case must be remanded to the circuit court for further proceedings, we pretermit discussion of Strickland’s remaining claims until return is made to this Court.
REMANDED WITH INSTRUCTIONS *185 *
WELCH, P.J., and WINDOM, KELLUM, and BURKE, JJ., concur.

. Kennedy testified that the three men did not take any property from Rothwell or Calzinski. Neither Rothwell nor Calzinski testified at trial.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Deputy McClure testified that the phrase "hit a lick” means "to rob somebody.” (R. 117.)

 Note from the reporter of decisions: On December 9, 2011, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On February 24, 2012, that court denied rehearing, without opinion. On April 6, 2012, the Supreme Court denied certiorari review, without opinion (1110658).