The defendant was indicted and convicted for the murder of Mary Judah, the mother of his child. Alabama Code 1975, Section13A-6-2 (Amended 1977). Sentence was life imprisonment. I
The defendant argues that the trial judge erred in instructing the jury on the plea of not guilty by reason of insanity. In his charge, the judge stated:
 "In making the determination of whether the Defendant was at the time of the alleged commission of the offense *Page 604 
charged not responsible by reason of mental disease or defect, the Code provides guidance to you in this respect. The term mental disease or defect does not include an abnormality of the mind which is only manifested by repeated criminal antisocial, immoral, or mean conduct." (emphasis added)
Defense counsel objected to the phrase "immoral or mean conduct:" "that is erroneous, it's misleading, and that is not a correct statement of the law. It is also words used by the prosecutors in their closing argument."
Section 13A-3-1 (b) provides: "`Mental disease or defect' does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." The purpose of this section is to deny the defense of insanity to "social psychopaths, i.e., habitual offenders without other symptoms." Commentary to Section 13A-3-1.
Although we do not approve of the instructions as given, we find no error in the trial judge's charge that the jury should not consider only "immoral or mean", conduct as included within the term "mental disease or defect."
Legal insanity does not embrace every kind of mental disease and disorder that renders a person not responsible for his acts. Waters v. State, 22 Ala. App. 644, 646, 119 So. 248
(1928). "Emotional insanity or moral obliquity will not sustain plea of insanity." Rowe v. State, 243 Ala. 618, 624,11 So.2d 749 (1943). Moral obliquity "has no recognition in the law of this state as an excuse for crime." Hall v. State, 208 Ala. 199,200, 94 So. 59 (1922). "(T)hat which is sometimes called `moral', or `emotional insanity', savors too much of a seared conscience or atrocious wickedness to be entertained as a legal defense." Boswell v. State, 63 Ala. 307, 321 (1879). "Moral idiocy" does not qualify under the defense of insanity. Claytonv. State, 45 Ala. App. 127, 131, 226 So.2d 671 (1969).
 "Where by `moral insanity' is meant a mere mental depravity, or moral insanity, so-called, which results not from any disease of the mind, but from a perverted condition of the moral system, where the person is mentally sane, this does not exempt one from responsibility for crimes committed under its influence." 22 C.J.S. Criminal Law, Section 63 (1961).
"High temper, hot blood, and passion, whether of an amorous nature, or arising from anger, hatred, jealousy, desire for revenge, or other emotions, will not excuse the commission of crime." 22 C.J.S. Criminal Law, Section 63. "Unusual or `weird' behavior alone cannot be equated with mental incompetency or insanity." Carey v. State, 361 So.2d 1176, 1179 (Ala.Cr.App. 1978), cert. denied, 374 So.2d 332 (Ala. 1979).
"The trial court has the right to read to the trial jury in its charge the law and the statutes of Alabama relative to the alleged crime." Green v. State, 42 Ala. App. 439, 447,167 So.2d 694, cert. denied, 277 Ala. 698, 167 So.2d 701 (1964). See alsoCassell v. State, 55 Ala. App. 502, 510, 317 So.2d 348 (1975);Gavin v. State, 52 Ala. App. 469, 470, 294 So.2d 169, cert. denied, 292 Ala. 722, 294 So.2d 170 (1974). While the better practice is to use the identical language of the statute, the judge need not precisely follow the statutory language in reading the law to the jury. Higdon v. State, 367 So.2d 991,994 (Ala.Cr.App. 1979).
 "Unless prohibited by statute, it is within the discretion of the court, in instructing the jury, to read or to quote a statute or a part thereof which is relevant and applicable to the case. Where a statute is referred to for the applicable principles of law, it is better practice to use its exact language, but this need not be done if the charge covers the subject matter of the statute in a substantial manner, and it is within the discretion of the court whether to read or state the substance of the statute." 23A C.J.S. Criminal Law, Section 1192 (1961).
However, the trial judge has "no power to legislate and read into a statute something omitted therefrom by the legislature, as by adding to an instruction, copying a statute in part, words not in the statute." 23A C.J.S., supra. *Page 605 
 "It is not for the courts to say what the Legislature should have done, or what was its intention, unless such intention is contained in the legislative language. The language may be explained, it cannot be detracted from or added to. The office of interpretation is not to improve the Statute, it is to expound it; and the court knows nothing of the intention of an Act, except from the words in which it is expressed, applied to the facts existing at the time." Gibbs v. State, 29 Ala. App. 113, 114-15, 192 So. 514 (1939), cert. denied, 238 Ala. 592, 192 So. 515 (1940).
A trial judge may explain to the jury the legal terms involved in his instructions where his explanation does not qualify, limit, or modify them. Harris v. State, 24 Ala. App. 59,61, 129 So. 795 (1930); Hale v. State, 10 Ala. App. 22, 30,64 So. 530 (1914). "(I)t is the duty of the court to see to it that the jury are not misled by any charge which is given, but so to simplify and explain the charges which are given, by additional instructions, as to prevent misunderstanding or a misapplication of them." Morris v. State, 25 Ala. 57, 58
(1854). Thus, in Frazer v. State, 159 Ala. 1, 3, 49 So. 245
(1909), our Supreme Court held that there was no error "in the court's reading to the jury the section of the Criminal Code under which the defendant was prosecuted, nor in explaining to the jury that the word `writing' in the code included printing."
By statute, the term mental disease or defect does not include an abnormality manifested only by "repeated criminal or otherwise antisocial conduct." Section 13A-3-1 (b). Although "immoral or mean conduct" is not mentioned in the statute, by definition it can be included within the term "otherwise antisocial conduct."
 "antisocial . . . a: tending to interrupt or destroy social intercourse, b: hostile to the well-being of society, c: characterized by markedly deviating behavior. 2: averse to the society of others or to social intercourse . . ."
Webster's Third International Dictionary 96 (1971).
 "immoral. . . .: not moral: inconsistent with purity or good morals: contrary to conscience or moral law: wicked, licentious . . .: opposed to, critical of, or in conflict with generally or traditionally held moral principles. . . ."
Webster's at 1130.
 "mean. . . . 7a: characterized by petty selfishness or malice: contemptibly disobliging or unkind. . . ."
Webster's at 1398.
The defendant does not assert that a mental disease or defect would include an abnormality manifested only by repeated "mean or immoral conduct." Even if the evidence showed that the defendant's life had been characterized by repeated or continuous immoral and mean conduct, such proof alone would not have established a defense of insanity. By adopting Section13A-3-1 (b), the legislature has "deliberately and positively excluded antisocial conduct from the statute." Simpson v.State, 62 Wis.2d 605, 215 N.W.2d 435, 439 (1974).
Reviewing the trial judge's charge to the jury as a whole and in light of the contentions and evidence, we find no error. The charge was expressed in plain language that is susceptible of ordinary understanding and should not be subjected to "hypercriticism". Addington v. State, 16 Ala. App. 10, 19,74 So. 846 (1916).
 II
At trial, the judge properly sustained the State's objection and refused to allow defense witness, psychologist Karl Kirkland, to testify to the results of neuropsychological tests administered by another psychologist at Dr. Kirkland's request. Dr. Kirkland was not present when the tests were given the defendant but had talked to the other psychologist over the telephone and had been sent the results of the tests. In a hearing outside the presence of the jury to determine the admissibility of the test results, Dr. Kirkland testified that the results would confirm what his "general psychological exam had evidenced."
Dr. Kirkland's testimony concerning the results of tests conducted by another constituted *Page 606 
hearsay. "(W)itnesses, including medical witnesses, cannot testify to facts of which their knowledge is derived from the unsworn statements of others." Hurst v. State, 356 So.2d 1224,1236 (Ala.Cr.App. 1978); Cordle v. State, 53 Ala. App. 148, 156,298 So.2d 77, cert. denied, 292 Ala. 717, 298 So.2d 85 (1974). "(E)xpert witnesses, even physicians, cannot testify to the opinions of others in giving their opinions." Carroll v. State,370 So.2d 749, 758 (Ala.Cr.App.), cert. denied, 370 So.2d 761
(Ala. 1979).
 "The traditional rule in this country has been that an expert, in giving his opinion, cannot rely upon the opinion of others. The basis for this rule of exclusion has been that such testimony is based upon what others have said, and, consequently, constitutes hearsay. In light of this rule a physician-witness' testimony to his opinion with respect to the condition of his patient may not be supported by testimony by such witness that certain opinions or reports, including reports of radiologists, concerning the patient had been made to him by other physicians." C. Gamble, McElroy's Alabama Evidence, Section 110.01 (3) (3rd ed. 1977).
There is a trend toward the admission of an expert's opinion based partly on medical, psychological, or hospital reports not in evidence if the reports are of a type customarily relied upon by the expert in the practice of his profession. Anno. 55 A.L.R.3d 551 (1974). However, this trend has not been followed by the courts of this state. Wilbanks v. Hartselle Hospital,Inc., 334 So.2d 870 (Ala. 1976); Prescott v. Martin,331 So.2d 240, 244 (Ala. 1976); Central of Georgia Railway Company v.Reeves, 288 Ala. 121, 257 So.2d 839 (1972); Price v. Lowe,263 Ala. 410, 82 So.2d 606 (1955). This is in accord with the general and traditional rule 31 Am.Jur.2d Expert And Opinion Evidence, Section 86 (1967). Compare Braswell v. State,371 So.2d 992, 995-97 (Ala.Cr.App. 1979), where the State was allowed to cross examine the defendant's expert witness and introduce the defendant's medical records from a state hospital after the expert had testified on direct examination that he had reviewed the records and specifically stated that they did not influence him one way or the other.
Quoting from Weihofen, Mental Disorder as a Criminal Defense
(1954), p. 277, our Supreme Court has noted:
 "`A qualified expert may testify to his opinion concerning the defendant's mental condition based either upon (1) personal examination of the defendant made by the witness, or (2) the testimony in the case, if he has been in court and heard it all. (3) He may also give his opinion upon hypothetical cases propounded by counsel.'" Smith v. State, 263 Ala. 1, 3, 82 So.2d 296 (1955).
"Although an expert witness may not express an opinion based on the opinion of another expert, he may base his opinion upon the facts testified to by another expert." Johnson v. State,378 So.2d 1164, 1170 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173
(Ala. 1979).
The source of our decision on this issue is the principle that insanity cannot be proven by hearsay evidence. Dickinsonv. State, 228 Ala. 28, 29-30, 152 So. 29 (1934); Howard v.State, 347 So.2d 574, 575 (Ala.Cr.App. 1977).
We have reviewed the errors raised on appeal and find that the judgment of the circuit court is due to be affirmed.
AFFIRMED.
All Judges concur.