The appellant, Charles Lee Young, was convicted of one count of burglary in the first degree, a violation of § 13A-7-5; two counts *Page 71 
of robbery in the first degree, violations of § 13A-8-41; one count of attempted rape in the first degree, a violation of §13A-4-2 and § 13A-6-1; one count of attempted sodomy in the first degree, a violation of § 13A-4-2 and § 13A-6-63; one count of sodomy in the first degree, a violation of § 13A-6-63; and one count of kidnapping in the first degree, a violation of § 13A-6-43. Young received seven sentences of life imprisonment without parole. In addition, Young was ordered to pay $1,000 in restitution and $200 to the victims compensation fund.
 FACTS
This case involves uncontradicted evidence of a horrifying assault on two elderly victims. M.K.E. and V.E. were assaulted and robbed in their Dothan home in June 1996. At the time, the elderly wife and husband were 79 and 82 years old, respectively. Evidence presented at trial tended to show the following.
When the couple returned home from shopping, they were met by an armed assailant, who was subsequently identified as Young. Young held a gun in V.E.'s face and demanded money. V.E. gave Young the $43 he had in his wallet. Young demanded more money and plundered the house in search of more.
After searching the house for more money Young ordered both victims to undress. Young tried to vaginally penetrate M.K.E., but was unsuccessful. Next, Young attempted to orally sodomize her. He then forced M.K.E. at gunpoint to lean forward. Young then anally sodomized the 79-year-old woman. When M.K.E. screamed in pain, V.E. raised up and was told to lie down or he would be killed.
Leaving M.K.E. collapsed on the floor, Young held V.E. at gunpoint and forced him to drive to the bank. When the two arrived at the drive-through teller, bank personnel became suspicious and asked V.E. to come inside. As V.E. and Young approached the bank, a bank teller pulled V.E. inside and slammed the door to prevent Young from entering. V.E. told the bank personnel about the situation, pleaded with them not to call the police, and withdrew $300. He then ran to the car and returned home, afraid that Young was on his way back to the couple's home to further harm M.K.E.
After V.E. and Young had left the house, M.K.E. called the police. By the time V.E. returned home, the police had arrived. Upon searching the neighborhood for the assailant, the police spotted Young, who was armed, a chase ensued, and Young was arrested. V.E. identified Young as the perpetrator.
 I.
Young argues that the State failed to prove a prima facie case of kidnapping in the first degree.
When an appellate court reviews a conviction for sufficiency of the evidence to support the conviction, the appellate court "must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution." Fairclothv. State, 471 So.2d 485, 489 (Ala.Crim.App. 1984), aff'd,471 So.2d 493 (Ala. 1985). A conviction will not be disturbed on the grounds of insufficiency of evidence "unless, allowing all reasonable presumption for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust."Jackson v. State 516 So.2d 726, 753 (Ala.Crim.App. 1985).
Section 13A-6-43, Ala. Code 1975, sets forth the elements of kidnapping in the first degree as follows:
 "(a) A person commits the crime of kidnapping in the first degree if he abducts another person with intent to
"(1) Hold him for ransom or reward; or
"(2) Use him as a shield or hostage; or
 "(3) Accomplish or aid the commission of any felony or flight therefrom; or
 "(4) Inflict physical injury upon him, or to violate or abuse him sexually; or
"(5) Terrorize him or a third person; or
 "(6) Interfere with the performance of any governmental or political function." *Page 72 
The indictment in this case states that Charles Lee Young did abduct V.E. with the intent to hold him, for ransom or reward, in violation of § 13A-6-43, Ala. Code 1975. Therefore, the State had to prove (1) that Young abducted V.E. and (2) that Young intended to hold V.E. for ransom or reward. Through the testimony of V.E. and bank personnel, the State proved that Young abducted V.E. and that V.E. was held "for ransom or reward" because his release was conditioned upon his withdrawing money from his bank account. V.E.'s testimony that Young demanded money, that he plundered the house for money, and that he continually threatened and abused M.K.E. and V.E. with demands for money is further evidence of Young's intent to hold V.E. for "ransom or reward."
Accepting as true all evidence introduced by the State, according the State all legitimate inferences therefrom, and considering all evidence in a light most favorable to the prosecution, Faircloth, supra, we would conclude that the State presented sufficient evidence to uphold the conviction.
 II.
Young contends that the trial court erred by instructing the jury as to the definition of "ransom or reward."
"The trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts of the case." Raper v. State, 584 So.2d 544,545 (Ala.Crim.App. 1991). "A trial court's oral charge to the jury must be construed as a whole, and must be given a reasonable — not a strained — construction." Williams v. State,710 So.2d 1276 (Ala.Crim.App. 1996). "A trial judge may explain to the jury the legal terms involved in his instructions where his explanation does not qualify, limit, or modify them." Brackin v.State, 417 So.2d 602, 605 (Ala.Crim.App. 1982).
The trial court instructed the jury on kidnapping in the first degree as follows:
 "A person commits the crime of kidnapping in the first degree if he abducts another person with the intent to — in this case, the charge in the indictment is hold him for ransom or reward. . .
 "Now, there is no legal definition in the Alabama Code of the words `ransom' or `reward.' As you can tell by these other definitions I have given you, the Alabama Code defines about everything else in some of these other charges. But it does not specifically define ransom or reward.
 "From Black's legal dictionary, the term ransom means the money, price, or consideration paid or demanded for redemption of a kidnapped person.
 "And the word reward from that same dictionary means that which is given for some service or attainment.
 "There is no legal definition for those two words, though. And you may consider these definitions from Black's Law Dictionary
and you may use your own common understanding from everyday life of the definitions of these terms as they apply to the facts in this case.
 "You are not bound by a particular dictionary definition, but you must apply the definition of these two words to the facts in this case.
(R. 374-76.) Young argues the trial court should not have included the dictionary definitions of those terms in its instructions to the jury. We disagree.
The instructions accurately reflected both the kidnapping statute and the facts of the case. Within its discretion, the trial court attempted to explain the legal terms "ransom or reward" contained in the statute. This charge does not qualify, limit, or modify the words "ransom or reward." Therefore, there was no reversible error.
 III.
Young asserts that the State failed to prove a prima facie case of robbery in the first degree in two separate counts and, therefore, that it violated the constitutional prohibition against double jeopardy.
Although a double jeopardy claim should be raised by way of pretrial motion under Rule 15.2, Ala.R.Crim.P., it was properly raised and preserved for our review by *Page 73 
Young's motion for a judgment of acquittal. See Kellett v. State,577 So.2d 915 (Ala.Crim.App. 1990). This motion was specifically directed to the second count of robbery because both robbery charges arose from one transaction. (R. 400.)
The constitutional guarantee against double jeopardy protects a defendant from being subjected to multiple punishments for the same offense. This guarantee bars the conviction of a defendant for two separate counts of first-degree robbery where the evidence adduced at trial tended to show that the defendant committed only one act of robbery against one victim. Moore v. State,709 So.2d 1324 (Ala.Crim.App. 1997).
In the present case, the court differentiated the two counts of robbery as follows:
 "And the State is maintaining that the first robbery charge is in regard to the $42 or $43 that [V.E.] said was taken from his wallet. And then that the other robbery charge was the going to the, I believe, the front bedroom, seeking money on that occasion."
(R. 416.)
The State presented evidence of one, but not two separate robbery convictions. The evidence tended to show that Young committed one continuous act of robbery against V.E., using a deadly weapon while committing a theft. The fact that Young forced V.E. into another room does not create a second robbery. The trial court erred in instructing the jury that it did. SeeRolling v. State, 673 So.2d 812, 815 (Ala.Crim.App. 1995). Accordingly, we affirm Young's conviction and his sentence as to the first count of robbery in the first degree, CC-96-846. We reverse the trial court's judgment as to the second count of robbery in the first degree and remand this cause to the trial court with instructions that it vacate Young's conviction and sentence as to the second count, CC-96-849.
 IV.
Young claims the trial court's instructions to the jury on the offenses of attempted sodomy and attempted rape were improper. Specifically, Young claims that the trial court's instruction on abandonment was inherently misleading and that it improperly shifted the burden of proof to the defendant.
The trial court charged the jury as follows:
 "So, concerning the attempted rape and the attempted sodomy [in the first degree], a person must, with the intent to commit that crime, do an overt act towards committing it. They can't just think it. They have to do something, an overt act towards its commission.
 "Now, the following is a principle of law that applies to that, to someone who attempts a crime. A person is not liable of attempt if, under circumstances manifesting a voluntary and complete renunciation of their criminal intent, they avoid the commission of the offense by abandoning the criminal effort. And a mere abandonment is insufficient to accomplish the avoidance by taking further affirmative steps to prevent it. The burden of injecting the issue of abandonment of the attempt is on the Defendant, but it does not shift any burden of proof."
(R. 371-372.) (emphasis added).
 "Before the State is entitled to a conviction as to this offense, [it] must prove
beyond a reasonable doubt that the Defendant did not avoid the commission of that offense by abandoning his criminal effort in regard to that offense under circumstances manifesting a voluntary and complete renunciation of his criminal intent in regards to that offense. "And that same proposition applies to attempted rape. . . ."
(R. 377.) (emphasis added).
"The trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts of the case." Raper, supra. The trial court may read or quote from a statute, in full or in part, to the jury as part of the instructions, if the statute is relevant and applicable to the case. Brackin, 417 So.2d at 604. So long as the jury instruction substantially covers the subject matter of the statute, the trial court may read the statute or state the substance of the statute. Id. *Page 74 
The trial court virtually recited the language of § 13A-4-2
(c), Ala. Code 1975. The jury charges properly contain the substance of the applicable attempt statute. The burden of proof remained on the prosecution as the portions of the charge emphasized above indicates. Therefore, the trial court's instruction was not inherently misleading nor was the prosecution's burden improperly shifted. There is no reversible error.
 V.
Young contends that the trial court improperly denied the defendant's motion to record the voir dire examination of the jury.
"In all noncapital cases, the court reporter shall take full stenographic notes of the voir dire of the jury and of the arguments of counsel if directed to do so by the judge." Rule 19.4 (b), Ala.R.Crim.P. In Carroll v. State, we held that the trial court's failure to order the taking of stenographic notes during the voir dire examination of the jury was not an abuse of discretion because (1) portions of the voir dire were contained in the record; (2) Rule 19.4, Ala.R.Crim.P., vests the trial judge with the discretion to determine whether the proceedings should be transcribed; and (3) the appellant's claim of discrimination in the striking of the jury may be determined by an examination of the record. Carroll v. State, 701 So.2d 47
(Ala.Crim.App. 1996).
Likewise, in the present case, portions of the voir dire examination are contained in the record. (R. 35-82.) The trial judge properly exercised the discretion afforded him. Young'sBatson challenge may be determined by examining the record. Therefore, as was the case in Carroll, supra, there was no abuse of discretion and no reversible error.
 VI.
Young maintains that the trial court's determination that he failed to establish a prima facie case of discrimination in the State's striking of the jury was improper. Young complains that the State's striking was not gender-neutral, in that the State used 8 of its 9 peremptory strikes to strike male venire-members.
A trial court's Batson ruling will not be reversed unless it is clearly erroneous. Bush v. State, 695 So.2d 70 (Ala.Crim.App. 1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, ___ U.S. ___,118 S.Ct. 418, 139 L.Ed.2d 320 (1997).
 "To prove a prima facie case of purposeful discrimination under Batson and its progeny, a defendant must show
 "(1) that members of a cognizable racial group or gender were excluded from the defendant's jury;
 "(2) that he or she is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate,' and
 "(3) that these facts and other relevant circumstances raise an inference that the prosecutor used such a practice to exclude venirepersons from the jury on account of race or gender."
Bush, 695 So.2d at 95.
"Merely showing that the challenged party struck one or more members of a particular race is not sufficient to establish a prima facie case." Edwards v. State, 628 So.2d 1021, 1024
(Ala.Crim.App. 1993). "When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created." Edwards, 628 So.2d at 1024 quoting Harrell v. State, 571 So.2d 1270, 1271 (Ala. 1990).
By analogy, Young's accusation that several men had been struck by the State, absent any other grounds, was not sufficient to establish a prima facie case of discriminatory striking by the State. As the trial court noted, the defendant was male, and one of the victims was male, and even after the strikes, the majority (7 of the 13 members of the jury) remained men. Therefore the trial court properly denied Young's Batson motion.
For the above-stated reasons, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded with instructions. The trial court should file *Page 75 
with this court its order vacating Young's conviction and sentence, above, so that due return may be made to this court within 28 days of the date of this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.*
LONG, P.J., and McMILLAN and BASCHAB, JJ., concur.
BROWN, J., recuses.
* Note from the reporter of decisions: On August 14, 1998, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On October 2, 1998, that court denied rehearing, without opinion.