The appellant, Carol McPherson, was indicted for three counts of discharging a firearm into an occupied dwelling and one count of second-degree assault. She was convicted of two counts of discharging a firearm into an occupied dwelling, violations of §13A-11-61(a), Ala. Code 1975.[1] The trial court sentenced her, as a habitual offender, to serve concurrent terms of fifteen years in prison on each conviction. See § 13A-5-9(a)(2), Ala. Code 1975. The appellant did not file any post-judgment motions. This appeal followed.
The evidence showed that, on November 28, 2001, the appellant went to the residence of her former husband, Roger Walden, and his wife, Lisa Walden; that the appellant tried to open the screen door, but it was locked; that the appellant was yelling and screaming at Roger and Lisa, who were sitting in the den; that, at some point, Roger and Lisa's three-year-old daughter, M.E.W., came into the room; that Lisa picked up a cellular telephone to try to call law enforcement authorities; that the appellant pulled out a gun, pointed it at Lisa's forehead, told Lisa not to call law enforcement authorities, and threatened to kill Lisa and Roger; that Lisa attempted to close the door; that the appellant shot Lisa; and that the appellant fired another shot as the door was closing, but she did not hit anyone.
The appellant argues that her convictions for two counts of discharging a firearm into an occupied dwelling violate double jeopardy principles. The State argues that, because she did not first present this argument to the trial court, the appellant did not preserve this argument for appellate review. Therefore, we must determine whether the appellant's double jeopardy claim is jurisdictional and reviewable even though she raises it for the first time on appeal.
Count I of the indictment alleged that the appellant
 "did shoot or discharge a firearm into a dwelling, to-wit: 1211 Eighth Avenue Southeast, in Decatur, Alabama, while said dwelling was occupied by Roger Walden, in violation of Section 13A-11-61 of the Code of Alabama[.]"
(C.R. 25.) Count II of the indictment alleged that the appellant *Page 1116 
 "did shoot or discharge a firearm into a dwelling, to-wit: 1211 Eighth Avenue Southeast, in Decatur, Alabama, while said dwelling was occupied by Lisa Walden, in violation of Section 13A-11-61 of the Code of Alabama[.]
(C.R. 25.) Finally, Count III of the indictment alleged that the appellant
 "did shoot or discharge a firearm into a dwelling, to-wit: 1211 Eighth Avenue Southeast, in Decatur, Alabama, while said dwelling was occupied by [M.E.W.], in violation of Section 13A-11-61 of the Code of Alabama."
(C.R. 25.)
In Craig v. State, 893 So.2d 1250, 1252-56 (Ala.Crim.App. 2004), we addressed a similar factual situation as follows:
 "The facts adduced at trial indicate the following: On July 9, 2001, Paulette Gallahar was working at a dry-cleaning business when Craig entered the store, pulled out a weapon, and announced, `"Oh by the way, this is a robbery. . . . I'm taking money out of this store and I'm taking your car."' (R. 95.) Craig stole $45 from the cash register and forced Gallahar into the back of the store. In the back of the store, Craig took $5 and car keys from Gallahar's purse. Craig forced Gallahar to kneel in a corner, put plastic around her head, and held a gun to her head. Another customer entered the front of the store. Craig went to wait on the customer, so as to not cause any suspicion. Gallahar ran to the doorway to the front of the store and shouted, `"It's a robbery, it's a robbery."' (R. 103.) She ran out the back door, yelling, jumped into her car, and locked the doors. Craig followed her and, with her keys, unlocked the passenger side door. Craig got into the passenger side of the front seat, grabbed Gallahar's wrist, and stated, `Okay, bitch, you're driving.' (R. 105.) Gallahar jerked away from Craig, jumped out of the car, and ran. Craig drove away from the scene of the crime in Gallahar's car. Craig was arrested in Kentucky several days later in Gallahar's car. Gallahar later picked Craig out of a photographic lineup.
". . . .
 ". . . Craig argues on appeal, as he did at trial, that he robbed only one person, albeit twice, and that, therefore, `double jeopardy principles are implicated.' (C. 47.). . . .
". . . .
 "`The constitutional guarantee against double jeopardy protects a defendant from being subjected to multiple punishments for the same offense. This guarantee bars the conviction of a defendant for two separate counts of first-degree robbery where the evidence adduced at trial tended to show that the defendant committed only one act of robbery against one victim. Moore v. State, 709 So.2d 1324
(Ala.Crim.App. 1997).'
 "Young v. State, 724 So.2d 69, 73 (Ala.Crim.App. 1998).
 "`This is not a case where the same act or transaction constitutes a violation of two distinct statutory provisions. See Blockburger v. United States, 284 U.S. 299 (1932). . . . The pertinent inquiry in deciding whether [these convictions are] acceptable in the face of constitutional guarantees against double jeopardy then becomes defining the correct unit of prosecution. Bell v. United States, 349 U.S. 81 (1955).
 "`"`A single crime cannot be divided into two or more offenses and thereby subject the perpetrator to multiple convictions for the same offense. Const. of 1901, Art. I, § 9; U.S. Const. Amend. V.' Ex parte Darby, 516 So.2d 786, 787 (Ala. *Page 1117 
1987). Such question of double jeopardy is determined by the following principles:
 "`"`It has been aptly noted that "the Blockburger [v. United States, 284 U.S. 299 (1932),] test is insufficient where . . . the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction." Rashad v. Burt, 108 F.3d 677 (6th Cir. 1997). This is because when "a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied." State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998). The "appropriate inquiry" in such a case "asks what `unit of prosecution' was intended by the Legislature as the punishable act. . . . The inquiry requires us to look to the language and purpose of the statutes, to see whether they speak directly to the issue of the appropriate unit of prosecution, and if they do not, to ascertain that unit, keeping in mind that any ambiguity that arises in the process must be resolved, under the rule of lenity, in the defendant's favor." Commonwealth v. Rabb, 431 Mass. 123, 725 N.E.2d 1036 (2000) (concluding that allegedly multiple drug possessions justify multiple charges if the possessions are sufficiently differentiated by time, place or intended purpose, the case here regarding defendant's possession of drugs at his residence for immediate sale and his possession of drugs at motel for future sales).'
 "`"4 Wayne R. LaFave et al., Criminal Procedure § 17.4(b), 2001 Pocket Part n. 66 (2d ed. 1999). See also Project, `Twenty-Ninth Annual Review of Criminal Procedure,' 88 Geo. L.J. 879, 1293 (2000) (`when the government seeks to prove that a single act or occurrence results in multiple violations of the same statute, the rule of lenity requires only one punishment unless legislative intent to impose multiple punishments is shown')."
 "`Townsend v. State, 823 So.2d 717, 722
(Ala.Crim.App. 2001) (footnote omitted [in Girard]).'
 "Girard [v. State], 883 So.2d [714,] 715-16 [(Ala.Crim.App. 2002)].
 "`"Robbery is an offense against the person. . . .'" Ex parte Windsor, 683 So.2d 1042, 1046 (Ala. 1996) (quoting Windsor v. State, 683 So.2d 1027, 1032
(Ala.Crim.App. 1994)). That is, the victim in this case was Gallahar, not the dry-cleaning business, although some of the property taken belonged to the business. Proof of an actual taking of property is not required to sustain a conviction for robbery. See Cook v. State, 582 So.2d 592 (Ala.Crim.App. 1991). Thus it is the use of force, or the threat of the use of force, against the person that constitutes the crime; therefore, the unit of prosecution is the act of violence against the person. Thus, the number of charges against the defendant is not determined by the number of pieces of property actually taken, as was done in this case. Cf. Connolly v. State, 539 So.2d 436, 441-42 (Ala.Crim.App. 1988) (`The State could not convert a single theft of various items of property into separate offenses by alleging the theft of different items in separate indictments. All the property was taken during the same transaction and constituted one offense. Such is not permitted.').
"In Young, this Court reasoned:
 "`In the present case, the court differentiated the two counts of robbery as follows: *Page 1118 
 "`"And the State is maintaining that the first robbery charge is in regard to the $42 or $43 that [V.E.] said was taken from his wallet. And then that the other robbery charge was the going to the, I believe, the front bedroom, seeking money on that occasion."
"`(R. 416.)
 "`The State presented evidence of one [robbery], but not two separate robberies. The evidence tended to show that Young committed one continuous act of robbery against V.E., using a deadly weapon while committing a theft. The fact that Young forced V.E. into another room does not create a second robbery. The trial court erred in instructing the jury that it did. See Rolling v. State, 673 So.2d 812, 815
(Ala.Crim.App. 1995).'
"724 So.2d at 73.
 "The evidence in this case, like the evidence in Young, shows that Craig committed one continuous act of robbery against Gallahar. For the reasons stated above, the fact that Craig took property from both Gallahar and from the dry-cleaning business does not create two separate robbery offenses. Therefore, because Craig was twice placed in jeopardy by being indicted for and convicted of two separate charges of first-degree robbery when he in fact committed only one crime against one victim, one of Craig's convictions for first-degree robbery is to be vacated, along with the accompanying sentence."
(Footnote omitted; some emphasis added.) See also Smith v.State, 895 So.2d 381 (Ala.Crim.App. 2004).
Section § 13A-11-61(a), Ala. Code 1975, provides, in pertinent part:
 "No person shall shoot or discharge a firearm . . . into any occupied or unoccupied dwelling . . . in this state."
Discharging a firearm into an occupied dwelling is not a victim-specific offense. Rather, the unit of prosecution in a case that involves discharging a firearm into an occupied dwelling is the act of discharging the firearm into that dwelling. Therefore, the number of people who are in the dwelling at the time of the offense is irrelevant.
In this case, the appellant was charged with discharging a firearm into the same dwelling during one course of conduct. The only difference between Counts I, II, and III of the indictment was the name of the occupant in the dwelling at the time of the offense. However, this case involved only one unit of prosecution, which was the appellant's act of discharging the firearm into the Waldens' occupied dwelling. The fact that more than one person was in the dwelling at the time of the act was irrelevant, and the names of the various occupants in Counts I, II, and III of the indictment were superfluous. Therefore, the appellant's convictions for two counts of discharging a firearm into an occupied dwelling violate double jeopardy principles.
In arguing that the double jeopardy issue is not properly before this court, the State relies on our holding in Straughnv. State, 876 So.2d 492 (Ala.Crim.App. 2003). In Straughn, the appellant was convicted of two counts of first-degree unlawful possession of marijuana. One count was based on marijuana seedlings that law enforcement officers discovered at Straughn's residence, and the other count was based on marijuana plants that law enforcement officers discovered growing in a wooded area in a neutral location. Initially, this court held that Straughn's convictions for two counts of first-degree unlawful possession of marijuana violated double jeopardy principles. However, on return to remand and on application for rehearing, we withdrew our previous opinion *Page 1119 
and affirmed both of the appellant's convictions and sentences for first-degree unlawful possession of marijuana. First, we noted that Straughn did not argue, either at trial or on appeal, that his convictions violated double jeopardy principles. We then held that the double jeopardy issue in that case was a nonjurisdictional issue and was, therefore, not properly before this court. In reaching our decision that the double jeopardy issue in that case was nonjurisdictional, we stated:
 "[T]his case, like Harris [v. State, 563 So.2d 9
(Ala.Crim.App. 1989)], involves a multicount indictment alleging separate offenses. Unlike Lorance [v. State, 770 So.2d 644 (Ala.Crim.App. 1999)], where the indictment on its face alleged in separate counts alternative methods of committing a single offense, the indictment here alleged separate offenses of possession of marijuana in the first degree. Although the evidence at trial established that the marijuana found on Straughn's property and the marijuana found at the neutral site were part of a single growing operation and, thus, constituted a single act of possession under the rationale of Townsend [v. State, 823 So.2d 717 (Ala.Crim.App. 2001)], Straughn did not argue that the evidence was insufficient to support separate convictions based on the jury's findings of separate acts of possession. Stated differently, Straughn's conviction under the second count is not supported by the evidence; however, other than as noted in part III of this opinion, the sufficiency of the evidence to support the conviction was never raised as an issue in the trial court. In Townsend, this Court stated:
 "`[W]e conclude that Townsend was properly prosecuted and convicted for the crime of trafficking in cocaine. The trial court properly denied Townsend's motion for a judgment of acquittal. We also note, in conclusion, that the propriety of aggregating separate quantities of a controlled substance depends on the particular facts in question. Only an analysis of the facts will dictate whether a defendant's possession was sufficiently differentiated by time or location as to constitute separate units for prosecution or whether it constitutes a single offense.'
"823 So.2d at 724."
Straughn, 876 So.2d at 508-09 (emphasis added).
The defendants in both Straughn and Harris[2] were charged with multiple counts of possession of prohibited items that arose from the possession of more than one prohibited item. In such cases, it is not clear on the face of the indictments that multiple convictions will violate double jeopardy principles. Rather, the evidence presented at trial regarding the items possessed and the surrounding circumstances must be reviewed to determine whether the evidence established independent acts of possession or whether the evidence established only one act of possession. Therefore, those types of cases actually are more similar to nonjurisdictional sufficiency-of-the-evidence claims rather than jurisdictional double jeopardy claims.
In this case, it was undisputed that the appellant fired into a single occupied dwelling during one course of conduct. The only allegation in the various counts of the indictment that changed was the name of the occupant of the dwelling. As we have previously stated, discharging a firearm into an occupied dwelling is not a victim-specific offense. Therefore, deleting *Page 1120 
the superfluous names of the occupants of the dwelling, the three counts, on their face, simply charge the appellant with the same offense three times. Accordingly, the issue in this case is not whether the State presented sufficient evidence to support multiple, independent offenses. Rather, the question is whether a defendant can be convicted of multiple counts of discharging a firearm into an occupied dwelling based solely on the fact that there were multiple occupants in the dwelling, which is a question of law. Therefore, our holding in Straughn is not applicable to this case.
This case is analogous to the situation presented in Ex parteRobey, 920 So.2d 1069, 1071 (Ala. 2004), in which the Alabama Supreme Court held:
 "Robey was convicted of two counts of first-degree assault under two subsections of the same Code section. . . .
 "We conclude that the offense of first-degree assault under § 13A-6-20(a) `may be committed by several different methods, and the State may allege and prove any one or all of those various methods in its attempt to establish the defendant's guilt.' [Ex parte] Rice, 766 So.2d [143,] 150 [(Ala. 1999)]. We have found no indiction that the Legislature intended to impose multiple punishments under the separate subsections of § 13A-6-20(a) when the actions described in each of those subsections are based on the same conduct of the accused, as well as the same injuries to the same victim. Therefore, punishing Robey twice for the same offense — first-degree assault — violated his double jeopardy rights.
 ". . . The violation of Robey's double-jeopardy rights raises questions of the trial court's jurisdiction to enter a judgment on both assault counts."
Similarly, this case involves multiple prosecutions for the same course of conduct. Because discharging a firearm into an occupied dwelling is not a victim-specific offense, at most, Counts I, II, and III of the indictment alleged various methods of proving that the dwelling was occupied rather than independent, separate offenses. Therefore, the trial court did not have jurisdiction to enter judgments on both counts of discharging a firearm into an occupied dwelling. Accordingly, this issue is properly before this court, even though the appellant did not first present it to the trial court.
As we previously noted, the appellant's two convictions for discharging a firearm into an occupied dwelling violated double jeopardy principles. Therefore, she could not properly be convicted of and sentenced for two counts of discharging a firearm into an occupied dwelling. The trial court sentenced the appellant to serve concurrent terms of fifteen years in prison. However, in Ex parte Rice, 766 So.2d 143 (Ala. 1999), the supreme court addressed a similar situation as follows:
 "We note that merely ordering that Rice's sentences run concurrently is not a constitutionally acceptable option. The Supreme Court stated in Ball v. United States, 470 U.S. 856, 864-65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985):
 "`The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See Missouri v. Hunter, 459 U.S. 359, 368[, 103 S.Ct. 673, 74 L.Ed.2d 535] (1983).
 "`The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, *Page 1121 
has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See Benton v. Maryland, 395 U.S. 784, 790-91[, 89 S.Ct. 2056, 23 L.Ed.2d 707] (1969); Sibron v. New York, 392 U.S. 40, 54-56[, 88 S.Ct. 1889, 20 L.Ed.2d 917] (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.'
 "See, also, Rolling v. State, [673 So.2d 812
(Ala.Crim.App. 1995)].
 "Neither is it an acceptable option to merely vacate one of Rice's convictions and its corresponding sentence. The jury specifically found that Rice had violated § 13A-6-2(a)(3) in two different ways — by participating in a kidnapping and causing Taylor's death and by participating in a robbery and causing Taylor's death. Based on the record before us, an appellate court's vacating one of Rice's convictions and its corresponding sentence would have the effect, albeit unintended, of nullifying a part of the jury's verdict. We think the better approach is for the Court of Criminal Appeals to remand the case to the trial court for the entry of a new order — an order that adjudges Rice guilty of Taylor's murder and sentences him for that single offense."
Rice, 766 So.2d at 152-53. Therefore, we remand this case to the trial court with instructions that that court enter a new order that adjudges the appellant guilty of the single offense of discharging a firearm into an occupied dwelling and sentences her for that single offense. On remand, the trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 28 days after the release of this opinion.
REMANDED WITH INSTRUCTIONS.*
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.
[1] The jury found the appellant not guilty of the two remaining charges.
[2] Harris was charged with four counts of possession of obscene materials based on one pornographic magazine and three videotapes that were found in his home.
* Note from the reporter of decisions: On November 4, 2005, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On December 16, 2005, that court denied rehearing, without opinion.